**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DANIEL LOPEZ, | ) CV No. 18-2589-RSWL-E |
| Plaintiff, | ) |
| | ) |
| | ) **ORDER RE: APPLICATION FOR** |
| v. | ) **DEFAULT JUDGMENT AGAINST** |
| | ) **DEFENDANT MACCA** |
| | ) **Corporation**[12] |
| MACCA CORPORATION, a | ) |
| California Corporation; and | ) |
| DOES, 1-10, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

Plaintiff Daniel Lopez ("Plaintiff") claims Defendant Macca Corporation ("Defendant") violated the Americans with Disabilities Act ("ADA") and California's Unruh Civil Rights Act ("Unruh Act"). Currently before the Court is Plaintiff's Application for Default Judgment ("Application") [12].  Having reviewed all papers submitted pertaining to this Application, the Court **NOW FINDS AND RULES AS FOLLOWS:**

the Court **GRANTS** Plaintiff's Application.

**I. BACKGROUND**

**A.** **Factual Background**

Plaintiff is a paraplegic and needs a wheelchair for mobility. Decl. of Daniel Lopez in Supp. of Pl.'s Appl. for Default J. ("Lopez Decl.") ¶ 2, ECF No. 12-5. In February 2018, Plaintiff visited Tacos El Rayo restaurant (the "Restaurant") located at 8025 Avalon Blvd., Los Angeles, California. Id. ¶ 4. Upon arrival, Plaintiff found that the Restaurant had no accessible handicap parking space with an adjacent access aisle where Plaintiff could deploy his ramp, in the parking lot reserved for patrons. Id. ¶ 5.

An investigator went to the Restaurant and photographed the property on March 27, 2018. Decl. of Corey Taylor in Supp. of Pl.'s Appl. for Default J. ("Taylor Decl.") ¶ 2, ECF No. 12-6. The investigator documented that although the Restaurant had a parking stall with the international symbol of accessibility on its surface, there was no further signage indicating that the space was reserved for disabled patrons. Id. ¶ 3. The investigator also determined that there was no access aisle adjacent to the parking stall, although there were remnants of paint suggesting there may have been such an access aisle at one time. Id. Further, the investigator noted that the Restaurant had an inaccessible transaction counter that was forty-six inches high. Id. ¶ 4. The Restaurant has no

accessible auxiliary counter or lowered portion of counter that is thirty-six inches high.  Id.

Plaintiff indicated that he personally encountered the parking and transaction counter barriers.  Compl. ¶ 23, ECF No. 1.  Plaintiff asserts that although he would like to return to the Restaurant, he has been deterred due to the physical barriers and lack of accessibility.  Lopez Decl. ¶¶ 7,8.

## B.  **Procedural Background**

Plaintiff filed his Complaint [1] on March 30, 2018, alleging Defendant violated the ADA and Unruh Act.  Plaintiff served Defendant by substituted service on May 10, 2018 and by mail on May 24, 2018 [7].  As of yet, Defendant has not pleaded, answered, or otherwise appeared in this case.  The Clerk of Court entered Defendant's Default [9] on June 27, 2018.

On August 24, 2018, Plaintiff filed the present Application [12] and served Defendant with it [12-4]. Plaintiff seeks an order enjoining Defendant to provide an accessible parking space with an adjacent access aisle and transaction counter and an award totaling $9,085.00 in statutory damages, attorneys' fees, and costs.

## II.  DISCUSSION

## A.  **Legal Standard**

Federal Rule of Civil Procedure ("Rule") 55(b) authorizes a district court to grant default judgment. Pursuant to Local Rule 55-1, the party moving for

default judgment must submit a declaration establishing: (1) when and against which party default was entered; (2) on which pleading default was entered; (3) whether the defaulting party is a minor, incompetent person, or active service member; and (4) proper service. Upon default, all factual allegations in the complaint, except those relating to damages, are assumed to be true. <u>TeleVideo Sys., Inc. v. Heidenthal</u>, 826 F.2d 915, 917-18 (9th Cir. 1987) (quoting <u>Geddes v. United Fin. Grp.</u>, 559 F.2d 557, 560 (9th Cir. 1977)).

In exercising its discretion to grant default judgment, the court must consider the following factors: (1) possibility of prejudice to the plaintiff, (2) merits of the substantive claim, (3) sufficiency of the complaint, (4) sum of money at stake, (5) possibility of disputes regarding material facts, (6) whether excusable neglect caused the default, and (7) the strong policy favoring decisions on the merits. <u>NewGen, LLC v. Safe Ciq, LLC</u>, 840 F.3d 606, 616 (9th Cir. 2016) (quoting <u>Eitel v. McCool</u>, 782 F.2d 1470, 1471-72 (9th Cir. 1986)). Additionally, if the defaulting party failed to plead or otherwise defend, the court must determine that it has subject matter and personal jurisdiction. <u>In re Tuli</u>, 172 F.3d 707, 712 (9th Cir. 1999). When default judgment is granted, the relief awarded "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R.

4

Civ. P. 54(c).

**B.   Analysis**

   1.   Jurisdiction

   The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 for violations of the ADA. See, e.g., Civil Rights Educ. & Enf't Ctr. v. Hosp. Props. Tr., 867 F.3d 1093, 1098 (9th Cir. 2017). Pursuant to supplemental jurisdiction, this Court also has jurisdiction over the state law claim brought under California's Unruh Act because it arises from the same nucleus of operative facts and same transactions as the ADA claim.  See 28 U.S.C. § 1367(b).  Indeed, a violation of the ADA necessarily constitutes an Unruh Act violation.  Cal. Civ. Code § 51(f).

   Moreover, the Court has personal jurisdiction over Defendant because it has "certain minimum contacts" with California such that "the suit does not offend 'traditional notions of fair play and substantial justice.'"  Calder v. Jones, 465 U.S. 783, 788 (1984) (quotation omitted).  Specifically, Defendant is a California corporation and owns the real property at which the incident giving rise to this Action occurred. Decl. of Dennis Price in Supp. of Pl.'s Appl. for Default J. ("Price Decl.") ¶ 3, ECF No. 12-4; Public Record Ex. 5, ECF No. 12-8; Compl. ¶ 3.

   Additionally, Defendant was properly served under Rule 4.  See Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc., 840 F.2d 685, 688 (9th Cir.

1988) ("A federal court does not have jurisdiction over a defendant unless the defendant has been served properly under [Rule] 4.") (citation omitted). Service on a corporation may be made in accordance with the rules of the state where service will be made. Rule 4(e)(1). California permits process to be served on the person designated by the corporation as an agent for service of process. Cal. Civ. Proc. § 416.10(a). Under California law, where "a copy of the summons and complaint cannot with reasonable diligence be personally delivered" to the agent for service of process, service can be made by:

> leaving a copy of the summons and complaint at the person's dwelling house . . . in the presence of a competent member of the household . . . and by thereafter mailing a copy of the summons and of the complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left. Service of summons in this manner is deemed complete on the 10th day after the mailing.

Cal. Civ. Proc. § 415.20(b).

Here, the process server established "reasonable diligence" by stating in his affidavit attached to the Proof of Service [7] that he tried three times to personally serve Defendant's designated agent for service of process ("agent") at his home. Proof of Service, ECF No. 7; Bein v. Brechtel-Jochim Grp., Inc., 8 Cal. Rptr. 2d 351, 353 (Cal. App. Ct. 1992)(finding "reasonable diligence" satisfied where a plaintiff

6

engages in "two to three attempts at personal service at a proper place"). After these unsuccessful attempts, the process server served Defendant via substituted service on May 10, 2018, by leaving a copy of the Complaint and summons with agent's wife at agent's home. <u>See</u> Proof of Service. Thereafter, on May 24, 2018, a copy of the summons and Complaint were mailed to agent at his home address. <u>Id.</u> Thus, Plaintiff has provided sufficient evidence to show that service of process on Defendant was proper and complete as of June 3, 2018.

　　2. <u>Local Rule 55-1</u>

　　Plaintiff has satisfied the procedural requirements for default judgment under Local Rule 55-1. The Clerk entered Default against Defendant as to the Complaint on June 27, 2018. Also, Defendant is not an infant, incompetent person, or person in military service. Price Decl. ¶ 2. Moreover, Plaintiff has served Defendant with notice of its Application. <u>Id.</u> ¶ 4

　　3. <u>Eitel Factors</u>

　　The <u>Eitel</u> factors weigh in favor of default judgment as to both claims.

　　　　a. *Factor 1: Prejudice to Plaintiff*

　　A court must first consider whether a plaintiff will suffer prejudice if default judgment is not entered. <u>See</u> <u>Eitel</u>, 782 F.2d at 1471 (citation

omitted).  Here, Defendant has failed to respond to the
Complaint or otherwise appear.  Without default
judgment, Plaintiff likely will have no recourse for
recovery.  See Landstar Ranger, Inc. v. Parth Enters.,
725 F. Supp. 2d 916, 920 (C.D. Cal. 2010); PepsiCo,
Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1177
(C.D. Cal. 2002).  Thus, this factor favors default
judgment.

      b.  *Factors 2 & 3: Sufficiency of the*
*Complaint and Merits of the Claim*

The second and third Eitel factors call for
analysis of the causes of action.  See Eitel, 782 F.2d
at 1471 (citation omitted).  Here, Plaintiff's claims
are sufficiently stated and meritorious, and as such,
these factors favor default judgment.

      i.  *Violation of the ADA*

To prevail under the ADA, a plaintiff must
establish that "(1) she is disabled within the meaning
of the ADA; (2) the defendant . . . owns, leases, or
operates a place of public accommodation; and (3) the
plaintiff was denied public accommodations by the
defendant because of her disability."  Molski v. M.J.
Cable, Inc., 481 F.3d 724, 730 (9th Cir. 2007) (citing
42 U.S.C. § 2182(a)-(b)).

According to the ADA, a disability is "a physical
or mental impairment that substantially limits one or

8

more major life activities," including walking.  42
U.S.C. § 12102(1)(A), (2)(A).  Here, Plaintiff's
paraplegia prevents him from walking at all, and
Plaintiff relies on a wheelchair for mobility.  Lopez
Decl. ¶ 2.  Therefore, Plaintiff is disabled.  Further,
the Restaurant is a public accommodation, 42 U.S.C.
§ 12181(7)(B), and Defendant owns the Restaurant,
Compl. ¶ 4.

Discrimination includes "failure to remove
architectural barriers . . . where such removal is
readily achievable . . . ."  42 U.S.C.
§ 12182(b)(2)(A)(iv).

Failure to provide an accessible transaction
counter constitutes an architectural barrier that
violates the ADA.  See Villegas v. Beverly Corner, LLC,
No. 2:16-cv-07651-CAS(SSx), 2017 U.S. Dist. LEXIS
133469, at *9 (C.D. Cal. Aug. 18, 2017) (citing 36
C.F.R. pt. 1191, App. D, § 904.4.1).  The accessible
portion must be no higher than thirty-six inches.  Id.
Here, the Restaurant has a forty-six-inch-high counter.
Compl. ¶ 22.

The 2010 Standards of the ADA require that—where
parking spaces are provided—a specified number of the
spaces must be accessible.  See Zarian v. Baghjajian,
No. SACV 16-01612-CJC(KESx), 2017 U.S. Dist. LEXIS
18751, at *6 (C.D. Cal. Feb. 8, 2017) (citing 28 C.F.R.

pt. 36, App. D, § 4.1.2; 36 C.F.R. pt. 1191, App. B, § 208.2). "Specifically, businesses that provide between one and twenty-five parking spaces must provide at least one handicap parking space that is van-accessible, meaning that it has an eight-foot access aisle." Id. Plaintiff believes that Defendant at one time had an accessible space, as indicated by faded blue paint and the international symbol of accessibility logo. Compl. ¶ 14. However, there is no signage in front of the space warning that it is reserved for handicapped patrons, and the adjacent access aisle has "faded beyond recognition." Id. ¶ 15; see Zarian, 2017 U.S. Dist. LEXIS 18751, at *6 (finding a lack of accessible parking where it appeared the defendant had an accessible parking space in the past, but allowed it to fade or get paved over). The lack of accessible parking constitutes a barrier under the ADA.

"Because the [ADA Accessibility Guidelines] establish[] the technical standards required for 'full and equal enjoyment,' if a barrier violating these standards relates to a plaintiff's disability, it will impair the plaintiff's full and equal access, which constitutes 'discrimination' under the ADA." Chapman v. Pier 1 Imps. (U.S.), Inc., 631 F.3d 939, 947 (9th Cir. 2011). Because the transaction counter and lack of accessible parking constitute barriers which relate

to Plaintiff's paraplegia, Plaintiff was denied full and equal access to the Restaurant in violation of the ADA.

The next issue is whether removal of the barrier is readily achievable.[1]  The Ninth Circuit has not decided which party has the burden of proving that removal of an architectural barrier is readily achievable.  Moore v. Robinson Oil Corp., 588 Fed. Appx. 528, 529-30 (9th Cir., 2014).  The majority of district courts apply the Tenth Circuit's burden-shifting scheme, which requires the plaintiff to bear the initial burden of producing evidence that supports a finding that removal is readily achievable, and which only then shifts the ultimate burden of persuasion to the defendant.  See Vogel v. Rite Aid Corp., 992 F. Supp. 2d 998, 1010 (C.D. Cal. 2014) (citing Colo. Cross Disability v. Hermanson Family, Ltd., 264 F.3d 999 (10th Cir. 2001)).  Here, Plaintiff alleges that removal of the barriers was readily achievable, and that Defendant "had the means and ability to make the change."  Compl. ¶¶ 27-32.  This allegation is sufficient to satisfy Plaintiff's burden.  See Vogel, 992 F. Supp. 2d at 1011

---

[1] Plaintiff argues that removal of the barrier is an affirmative defense that is waived unless raised.  Appl. at 5. This Court, in McComb v. Vejar, No. 2:14-CV-00941-RSWL-E, 2014 WL 5494017, at *6 (C.D. Cal. Oct. 28, 2014), already rejected this contention, raised by the same counsel, in the context of a default judgment proceeding.

(finding that plaintiff met its burden of production by alleging that defendant knew about the architectural barriers and had the financial resources to remove the barriers without difficulty or expense).

Because Plaintiff has adequately pleaded that he is disabled, that Defendant owns and operates a public accommodation, that he was denied full and equal access to the public accommodation because of his disability, and that removal of the barriers is readily achievable, he has sufficiently stated a meritorious claim under the ADA.

### ii. *Violation of the Unruh Act*

"A violation . . . under the [ADA] shall also constitute a violation of [the Unruh Act]." Cal. Civ. Code § 51(f). Since Defendant violated the ADA, Defendant necessarily violated the Unruh Act.

### c. *Factor 4: Money at Stake*

The fourth <u>Eitel</u> factor addresses the sum of money at stake in the action. <u>Eitel</u>, 782 F.2d at 1471 (citation omitted). "Default judgment is disfavored where the sum of money at stake is too large or unreasonable in relation to defendant's conduct." <u>Vogel</u>, 992 F. Supp. 2d at 1012.

Here, the statutory minimum penalty for a violation of the Unruh Act is $4,000.00. Cal. Civ. Code § 52(a). Plaintiff is seeking no more than $4,000.00 in damages.

The ADA and Unruh Act also provide for reasonable attorneys' fees and costs.  42 U.S.C. § 12205; Cal. Civ. Code § 52(a).  Plaintiff seeks $5,085.00 in attorneys' fees and costs.  "Courts frequently grant default judgment in Unruh Act and ADA cases and impose similar financial liabilities on the defendant." Vogel, 992 F. Supp. 2d at 1012 (holding that a sum of $13,739.20 was reasonable).  Therefore, the sum of money at stake is not unreasonable, and Defendant would not be unduly burdened by an award in Plaintiff's favor.

> d.  *Factor 5: Dispute of Material Fact*

The fifth Eitel factor is the likelihood of a dispute as to material facts.  Eitel, 782 F.2d at 1471-72 (citation omitted).  To date, Defendant has not answered or otherwise appeared in this Action.  Since Plaintiff's factual allegations are presumed true in this context and Defendant failed to move to set aside the default, no factual dispute exists that would preclude the entry of default judgment.  See Vogel, 992 F. Supp. 2d at 1013.  Thus, this factor weighs in favor of default judgment.

> e.  *Factor 6: Excusable Neglect*

Next, courts consider whether the default was due to some excusable neglect.  Eitel, 782 F.2d at 1472 (citation omitted).  Defendant here was properly served

13

as of June 3, 2018, and Plaintiff served notice of this Application on August 24, 2018. Nevertheless, Defendant has not appeared in this Action and has not offered any explanation for its default. Accordingly, this factor weighs in favor of granting default judgment. _Vogel_, 992 F. Supp. 2d 998 (finding "it reasonable to infer [the] default was not the product of excusable neglect" where defendant was properly served).

   f. *Factor 7: Public Policy*

  The seventh _Eitel_ factor considers the strong policy favoring rulings on the merits. _Eitel_, 782 F.2d at 1472 (citation omitted). Notwithstanding such policy, default judgment is appropriate "[w]here the [d]efendant's failure to appear makes decision on the merits impossible." _Warner Bros. Home Entm't, Inc. v. Slaughter_, No. CV 13-0892-DOC (RNBx), 2013 U.S. Dist LEXIS 156597, at *9 (C.D. Cal. Oct. 30, 2013) (citing _Craigslist, Inc. v. Naturemarket, Inc._, 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010)). As a result—and because all other _Eitel_ factors favor default judgment—the Court **GRANTS** the Application.

  4. <u>Relief</u>

  In seeking default judgment, "Plaintiff is required to prove all damages sought in the [C]omplaint." _Philip Morris U.S.A. Inc. v. Castworld Prods._, 219

F.R.D. 494, 498 (C.D. Cal. 2003).  Here, Plaintiff
seeks an injunction, damages, attorneys' fees, and
costs.

      a.  *Injunctive Relief*

Plaintiff requests an order directing Defendant to
provide compliant accessible parking with an adjacent
access aisle and transaction counters at the
Restaurant, as required by the ADA.  Under the ADA, a
plaintiff is entitled to injunctive relief, including
an order to make "facilities readily accessible to and
usable by individuals with disabilities."  42 U.S.C.
§ 12188(a)(2).  As such, the Court **ORDERS** Defendant to
provide ADA-compliant accessible parking and
transaction counters.  <u>See</u> <u>Vogel</u>, 992 F. Supp. 2d at
1011 ("Under 28 C.F.R. § 36.304(b), examples of readily
achievable steps to remove barriers
include . . . creating designated accessible parking
spaces.").

      b.  *Damages*

A defendant is liable for no less than $4,000.00
for violating California Civil Code section 51.  Cal.
Civ. Code § 52(a).  Here, Plaintiff only seeks
$4,000.00 in damages, which the Court **GRANTS**.

      c.  *Attorneys' Fees*

Plaintiff requests that the Court award $5,085.00
in attorneys' fees.  Both the ADA and Unruh Act

authorize attorneys' fees in this matter. 42 U.S.C. § 12205; Cal. Civ. Code § 52(a); <u>see</u> <u>Jankey v. Poop Deck</u>, 537 F.3d 1122, 1130 (9th Cir. 2008)("A prevailing plaintiff under the ADA should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.") (internal quotation marks omitted).

For ADA and Unruh Act cases, reasonable attorneys' fees are determined by reference to the lodestar method. <u>Vogel v. Harbor Plaza Center, LLC</u>, 893 F.3d 1152 (9th Cir. 2018)(finding that it was an abuse of discretion for the district court to treat the Local Rule 55-3 fee schedule, which is ordinarily used in instances of default judgment, as presumptively reasonable, rather than using a lodestar approach to calculate attorneys' fees for ADA and Unruh civil rights cases.). The court "must first determine the presumptive lodestar figure by multiplying the number of hours reasonably expended on the litigation by the reasonable hourly rate." <u>Secalt S.A. v. Wuxi Shenxi Constr. Mach. Co.</u>, 668 F.3d 677, 689 (9th Cir. 2012) (quotation omitted). The fee applicant must "produce satisfactory evidence—in addition to the attorney's own affidavits—that [his] requested [hourly] rates [were] in line with those prevailing in the community for similar services by lawyers of reasonably comparable

skill, experience and reputation." <u>Grove v. Wells</u>
<u>Fargo Fin. Cal., Inc.</u>, 606 F.3d 577, 583 (9th Cir.
2010) (quoting <u>Blum v. Stenson</u>, 465 U.S. 886, 896 n.11
(1984)).  The fee applicant also bears "the burden of
documenting the appropriate hours expended in the
litigation" and of "submit[ting] evidence in support of
those hours worked." <u>USW v. Ret. Income Plan for</u>
<u>Hourly-Rated Emps. of ASARCO, Inc.</u>, 512 F.3d 555, 565
(9th Cir. 2008) (quotation omitted).

Here, Plaintiff seeks $5,085.00 in fees based on
the work of Mark Potter, Russell Handy, Phyl Grace,
Christina Carson, and Dennis Price.  Plaintiff seeks
hourly rates for each attorney as follows[2]:

- Mark Potter: $425
- Russell Handy: $425
- Phyl Grace: $425
- Christina Carson: $350
- Dennis Price: $350

In support of this request, Mr. Price submits a
declaration discussing each attorney's qualifications,
including the attorneys' experience in disability
litigation, success in law school, and involvement in
disability-related organizations. <u>See</u> Price Decl.  ¶¶

[2] In Price's Declaration, he does not specifically identify
each of the rate amounts for every attorney.  However the rates
are referenced in the Billing Statement, so the Court takes these
amounts as Plaintiff's requested rates.

17

6-10. However, other than Mr. Price's declaration, including his statement that he "can attest that the rates billed by the Center for Disability Access for its attorneys are well within market rates," Plaintiff's counsel provides no evidence establishing that the rates were in line with those prevailing in the community. Decl. Price ¶ 12.

"Notwithstanding Plaintiff's failure to present sufficient evidence supporting the rates he seeks, '[d]istrict judges can . . . consider the fees awarded by other judges in the same locality in similar cases.'" Johnson v. Lin, No. 2:13-cv-01484, 2016 WL 1267830, at *4(E.D. Cal. March 31, 2016) (quoting Moreno v. City of Sacramento, 534 F.3d 1106, 1115 (9th Cir. 2008)). After reviewing awards in similar cases, as well as the attorneys' qualifications as stated in Mr. Price's Declaration, the Court concludes that the following hourly fees are reasonable[3]:

---

[3] See, e.g., Uriarte-Limon v. Walker, No. EDCV 16-377 JGC, 2017 WL 5665017, at *3 (Sept. 21, 2017)(finding, in a similar case, the following hourly rates reasonable: $425 for Mark Potter, $350 for Phyl Grace, and $250 for Dennis Price); Uriarte-Limon v. Levya, No. EDCV 16-194 JGB, 2017 WL 5665016, at *2 (June 30, 2017)(concluding that Plaintiff's requested rates are reasonable, whereby Mark Potter billed $425, Phyl Grace billed $350, Christina Carson billed $250, and Dennis Price billed $250); Shedlin v. Balagot, No. 2:14-cv-03664-CAS (JEMx), 2016 WL 2732133, at *3 (May 9, 2016) (agreeing with Plaintiff, based on five orders of judges in the Central District of California involving many of the same attorneys, that $425 for Mark Potter, $350 for Phyl Grace, and $250 for Dennis Price, are reasonable rates).

- Mark Potter: $425
- Russell Handy: $425
- Phyl Grace: $350
- Christina Carson: $250
- Dennis Price: $250

The next issue is whether the hours spent in this Action are reasonable. Plaintiff submits an itemized Billing Statement, which reflects that Plaintiff's attorneys spent 11.1 hours litigating this case. <u>See</u> Price Decl., Billing Statement. After reviewing the Statement, the Court concludes that several of the hours spent in this Action are unreasonable.

Specifically, senior attorney, Mr. Potter, billed 1.7 hours, during which he met with the client to discuss the case and determine whether the client had standing. <u>Id.</u> While meeting with a client to discuss the case is reasonable, the time it took Mr. Potter is inflated. The Restaurant is small,[4] and this Action only addresses two narrow issues: a non-compliant parking space and transaction counter. Discussing the client's encounters with the barriers and whether the client has sufficient contacts with the geographical area for standing purposes does not require nearly two hours of conversation at a rate of $425 per hour.

---

[4] From the photos, it appears that the Restaurant is no more than a counter next to roughly three tables, with a few parking spots in the adjacent lot. <u>See</u> Appl. Exh. 4, ECF No. 12-7.

Therefore, the Court reduces the amount billed for this meeting by seventy-five percent.

Further, Mr. Potter billed 2.5 hours during which he drove to and examined Defendant's site to assess the allegations, and then emailed an investigator indicating which photos and measurements he wanted. Id.; see Love v. Garcia, No. 5:15-cv-02004-CAS, 2017 WL 2927429, at *4 (C.D. Cal. July 7, 2017)("[I]t was unreasonable for Potter to bill a site visit only so that he could instruct an investigator to go back and take pictures . . . ."). This is especially so in light of the fact that Defendant's property is small and Plaintiff's architectural barriers are readily identifiable.

Further, even though Mr. Potter had just visited the property himself, another senior attorney, Mr. Handy, then billed 0.8 hours to review the investigator's report and photographs, and have a phone conversation with him about them. Price Decl., Billing Statement. This task is problematic for two reasons. First, the amount of time it took Mr. Handy, who "has prosecuted over a thousand ADA cases," seems inflated. Price Decl. ¶ 7. Second, it is redundant, since at a later point in time, Mr. Price billed 0.3 hours to have another discussion with the investigator and draft the investigator's declaration. Price Decl., Billing

Statement. Considering the size of the Restaurant,
there is only so much conversation that can be had with
the investigator about the two narrow topics at issue
in this case.

Lastly, Mr. Handy billed 1.8 hours in which he
"[c]onducted public records research to determine the
identity of the responsible parties and to determine if
there had been alterations or modifications that would
have triggered stricter Title 24 obligations for th[e]
property . . . ." Id. In Love, the court found that
this identical task—"[a] basic public records search to
identify the owner of the Property is not the type of
legal work that should be billed by an attorney at $425
per hour." Love, 2017 WL 2927429 at *4 (concluding
that Plaintiff could not recover for fees associated
with the aforementioned unreasonable tasks).

Because the billing for these tasks was not
reasonably expended, the Court excludes them from the
attorneys' fee award.[5] See Hensley v. Eckerhart, 461

---

[5] As discussed by the court in Uriarte-Limon, "[t]he Court
is mindful of the Ninth Circuit's admonition in, Moreno v. City
of Sacramento, 534 F.3d 1106 (9th Cir. 2008) that district courts
'may not attempt to impose its own judgment regarding the best
way to operate a law firm, nor to determine if different staffing
decisions might have led to different fee requests.' 534 F.3d at
1115. Rather, '[t]he difficulty and skill level of the work
performed, and the result achieved—not whether it would have been
cheaper to delegate the work to other attorneys—must drive the
district court's decision.' Id. Nonetheless, proceeding under
this framework, the Court notes that time estimates on certain
tasks by very senior attorneys are higher than would seem

U.S. 424, 434 ("The district court . . . should exclude from [its] initial fee calculation hours that were not 'reasonably expended' . . . . hours that are excessive, redundant, or otherwise unnecessary.")(citations omitted). Ultimately, with the adjusted billing rates for Phyl Grace, Christina Carson, and Dennis Price, as well as the exclusion of the unreasonable itemized tasks, the Court **GRANTS** $1,343.13 in attorneys' fees.

> ### d. *Litigation Costs*

Both the ADA and Unruh Act authorize the Court to award costs in this matter. 42 U.S.C. § 12205; Cal. Civ. Code § 52(a). Plaintiff seeks to recover $430.00 in filing fees and service costs and $200.00 in investigator fees, totaling $630.00 which the Court **GRANTS**.

//

//

---

reasonable given the almost entirely boilerplate nature of this litigation." 2017 WL 5665016 at *4. Here, the Court's analysis of the reasonableness of the requested attorneys' fees focuses on the "difficulty and skill level of the work performed." Id. The Court excludes several billed tasks from the fee award not because they could have been performed at a cheaper rate by more junior attorneys, but because they are unnecessary and excessive in light of the skill required to accomplish them. This is particularly so considering that they were accomplished by senior attorneys, who are well versed in ADA litigation, and the case appears fairly straight-forward. Id. (quoting Delson v. CYCT Mgmt. Grp., Inc., No. 11-cv-03781 MEJ, 2013 WL 1819265, at *8 (N.D. Cal. Apr. 30, 2013)("'One of the trade offs of being an expert in a specific field of law is the expectation that tasks will be completed with greater efficiency because the knowledge base and resources have already been well-established.'").

### III. CONCLUSION

Based on the foregoing, the Court **GRANTS** Plaintiff's Application for Default Judgment and awards Plaintiff $4,000.00 in statutory damages, $1,343.13 in attorneys' fees, and $630.00 in costs, for a total of $5,973.13. The Court further **ORDERS** Defendant to provide an ADA-compliant parking space and access aisle, and transaction counter.

**IT IS SO ORDERED.**

DATED: October 22, 2018          s/ RONALD S.W.LEW

                                        **HONORABLE RONALD S.W. LEW**
                                        Senior U.S. District Judge